McCAY, J.
The leading question in this record, is whether the facts, as developed by the testimony, show such a complicity, by old Mr. Peacock, in the fraud, evidently practiced by his son and Barnes, on Gay, as to make the land, the legal title, to which is in him, subject to the debt. We see nothing in the testimony to justify the inference that Benajah T. Peacock, the father, knew of, or had the least to- do- with, the fraud. Pie seems to have advanced his money honestly and unsuspiciously, and when his son presented him the title to the land, properly signed by old Mr. Mott, and witnessed by Benajah T. and Barnes, he had a right to think all was fairly done, as he had directed. The evidence is clear, that old Mr. Mott knew he was making the title to Benajah, the father, and not to the son;’ indeed, the papers themselves prove it, as no man in his senses would make a deed to a man, and call upon the grantee in the deed, as a witness to its execution. The papers, upon their face, convey the title to old Mr. Peacock, and any concealed equity young Mott might have had, growing out of the deception practiced upon him by young Peacock, could not fall upon old Mr. Peacock, who advanced, his money fairly and in good faith.
As to Gay, he lent his name, at a time when the title was fully in the defendant, the elder Peacock, and the deed was recorded.
The fact that the Peacocks are father and, son, does not help the case, since, said as it may appear, sons sometimes practice fraud even upon their fathers, and there is neither law nor equity to justify a jury in saddling the father with the burden of the son’s wickedness. There is, perhaps, some moral propriety in holding the father responsible for the results *of the training he has given his son, but that is a propriety which the Courts cannot enforce.
Had the facts of the case, as they came out in the evidence, authorized the jury to find old Mr. Peacock in complicity with the son, we should overrule the judgment of the Court in this case and order a new trial.
2. The Statute, Revised Code,, section 3429, allows amendments at any stage of the cause, and when the amendment proposes, as in this case, merely to make allegations, based upon proof already before the Court, we do not think the application came too late, even though the case was partly argued to the jury. It would be carrying technicality very far, to refuse such an application, to-wit, an amendment of the charges, to make fit the evidence actually before the Court, and that evidence not objected to. But as we hold there was no evidence to justify the inference of fraud, we will not disturb the judgment.
3. As to the matters of practice, we think such things are *94 in the control of the Judge. Doubtless there are many cases when a statement by each party, of his case, as he intends to rely upon it, will largely facilitate the business of the Court, and aid both Court and jury in applying the evidence to the pleadings and the law, and, if there be no terms exacted, calculated to prejudice the rights of the parties, we see no objection to the practice. It is clear to us that the Court erred in requiring the parties to say whether they were satisfied or not with his rulings upon the law. The Code gives thirty days to the party complaining within which to tender to the Judge his bill of exceptions. Revised Code, section 4193. • And such has been the uniform understanding of the Courts. To require a party to announce, during the trial and before the thirty days have expired, his assent or dissent from the rulings of the Court is, as it seems to us, a limiting of the time granted him by the Statute.
But we see in this no ground for a new trial, nothing that passed in this connection could by any possibility have influenced the jury. Indeed the Judge in terms told them to pay no attention to it.
*The verdict was such as the evidence required. Any other verdict under the evidence would have been improper, and we do not think a new trial ought to be had.
Judgment affirmed.